UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

LAURA MORALES,

        Plaintiff,

v.

HCA-HEALTHONE LLC d/b/a SWEDISH MEDICAL CENTER,

        Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Laura Morales, by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint and Jury Demand against HCA-HealthONE LLC d/b/a Swedish Medical Center ("HCA" or "Defendant") states and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an employment discrimination case arising from Defendant's failure to accommodate, discrimination toward, and wrongful termination of Plaintiff because Plaintiff is an otherwise qualified individual with a disability, within the meaning of the Americans with Disabilities Act ("ADA"), and because Plaintiff requested reasonable accommodations.

2. More specifically, Plaintiff was working as Defendant's Marketing and Public Relations Manager when she began experiencing severe back pain and ambulation issues due to her disability (i.e., spine condition, including degenerative disc disease, spinal stenosis, and related symptoms, including, but not limited to, leg weakness, numbness, and temporary paralysis).

1

Around the end of November 2016, Plaintiff requested and was approved the accommodation of leave to undergo and recover from spinal fusion surgery that took place on December 8, 2016.

3.  Throughout December 2016 and January 2017, Plaintiff communicated back and forth with the Company regarding her recovery and her expected return to work date.  On or about January 16, 2017, Plaintiff informed Defendant that she would have certain temporary restrictions when she returned to work, including working part-time hours for two weeks, beginning January 19, 2017, before returning to a full-time schedule on February 6, 2017.  Plaintiff additionally had temporary twisting and bending restrictions for a definite duration, as well as a temporary restriction from lifting more than thirty pounds for a definite duration.

4.  On Plaintiff's first day back at work on January 19, 2017, Plaintiff met with Tonzia Buor, Defendant's Human Resources Business Partner.  Ms. Buor told Plaintiff that Plaintiff's supervisor was "unable to accommodate" Plaintiff's temporary restrictions.  Ms. Buor insisted Plaintiff could not return to work until she no longer had *any* restrictions associated with her disability.  Plaintiff was then escorted out of the building, effectively placed on an involuntary leave without pay, and told that the Company would be in touch.

5.  During her involuntary leave, Plaintiff repeatedly tried to get in touch with Defendant's Human Resources regarding her return to work and requests for reasonable accommodations.  Defendant repeatedly ignored Plaintiff.  Even when Plaintiff's part-time hours restriction was lifted on February 6, 2017, Plaintiff did not receive any response from Defendant regarding her attempts to return to work and requests for reasonable accommodations.

6.  Finally, on March 11, 2017, Plaintiff received a letter from Defendant via Certified Mail stating that Plaintiff's position had been filled on February 20, 2017 and that her employment

was therefore terminated. The letter was notably backdated to February 27, 2017, a date right before Plaintiff's one-year anniversary and potential eligibility for protected job leave entitlements under the Family and Medical Leave Act ("FMLA").

7. Based on the foregoing, and as detailed herein, Defendant violated the ADA by failing to provide Plaintiff, a qualified individual with a disability, with reasonable accommodations and terminating her employment because of her disability and/or in retaliation for requesting reasonable accommodations related to her disability.

**PARTIES**

8. Plaintiff is, and at all times relevant to this Complaint was, a resident of Colorado.

9. Defendant HCA-HealthONE LLC d/b/a Swedish Medical Center ("HCA" or "Defendant") is a Colorado corporation with a principal office address of 4900 S. Monaco Street, Suite 380, Denver, Colorado 80237.

10. At all relevant times, Defendant was Plaintiff' "employer" within the meaning of the Americans with Disabilities Act.

11. Defendant is an employer within the meaning of 42 U.S.C. § 12111(5)(A), in that Defendant has 15 or more employees each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

**JURISDICTION AND VENUE**

12. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

13. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

15. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

16. Plaintiff filed her Charge of Discrimination, Number 541-2018-00738 with the Equal Employment Opportunity Commission for disability discrimination and retaliation on or about December 26, 2017.  Based on the evidence obtained during the investigation of the Charge, the EEOC determined there is reasonable cause to believe Defendant violated the ADA by denying Plaintiff a reasonable accommodation for a disability and subsequently discharging Plaintiff because of an actual and/or perceived disability and in retaliation for participating in the protected activity of requesting a reasonable accommodation.

17. Plaintiff was issued a Notice of Right to Sue with Respect to Charge Number 541-2018-000738 on February 17, 2021, and Plaintiff filed the present action within ninety (90) days of receipt of same.

18. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

19. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

20. Plaintiff worked for Defendant as Manager of Marketing and Public Relations from February 29, 2016 to her unlawful termination on or after February 20, 2017.

21. When Plaintiff was first hired to work for Defendant, Plaintiff was informed that

she would take over for her Manager, Nicole Williams, Defendant's Associate Vice President of Marketing and Public Relations, who planned to leave her position with Defendant within 12 to 18 months of Plaintiff's start date.

22. In September 2016, and prior thereto, Plaintiff began experiencing severe pain related to her actual and/or perceived disability (i.e., Plaintiff's spine condition, including, degenerative disc disease, spinal stenosis, and related symptoms including, but not limited to, leg weakness, numbness, and temporary paralysis from the waist down).  When in its active state, Plaintiff's spine condition substantially limited Plaintiff's ability to walk as compared to most people in the general population.

23. In September 2016, Plaintiff informed Ms. Williams of her spine condition when Plaintiff requested and used the accommodation of working remotely to undergo a spinal nerve ablation procedure.  Ms. Williams became upset and reprimanded Plaintiff for working remotely to fulfill her responsibilities, as opposed to calling out sick from work entirely to undergo the nerve ablation procedure.

24. At or around the end of November 2016, Plaintiff requested and was approved for medical leave related to her actual and/or perceived disability.  Plaintiff informed Defendant that her medical providers expected her recovery would take approximately two months.

25. On or about December 8, 2016, Plaintiff underwent spinal fusion surgery.

26. In December 2016 and January 2017, Plaintiff kept in contact with Defendant regarding her recovery and her expected return to work date.  Regardless, Defendant incorrectly indicated Plaintiff's return to work date would be January 11, 2017; although Plaintiff had informed Defendant that her doctor would be releasing her to return to work on January 19, 2017.

After multiple communications with the Company's representatives, Plaintiff was eventually informed that she could return to work on January 19, 2017.

27. Three days prior to her return to work, if not earlier, Plaintiff also informed Defendant that she would have certain temporary restrictions for definite durations. For example, Plaintiff was restricted from bending, twisting and lifting more than 30 pounds for six months from the date of her surgery.

28. Plaintiff's activity restrictions did not prevent Plaintiff from performing her essential job functions as Defendant's Manager of Marketing and Public Relations. During the nine months Plaintiff had worked for Defendant in that same role prior to her medical leave, Plaintiff had performed physical activity that would have implicated her restrictions on only one occasion when she was setting up for an event. Even then, Plaintiff had more than enough help to set up the event and only performed physical activity herself to expedite the set-up.

29. Upon information and belief, Defendant's job description for the position Plaintiff held at the time of her termination did not include any physical requirements regarding an individual's ability to lift, bend or twist in order to perform the position's essential job functions.

30. It would not have caused Defendant any undue hardship to accommodate Plaintiff's activity restrictions for six months following the date of her surgery.

31. Three days prior to her return to work, if not earlier, Plaintiff also informed Defendant that she would temporarily be restricted from working full-time hours for a mere two weeks. Specifically, from January 19, 2017 to February 6, 2017, Plaintiff was restricted to working a modified schedule of five hours per day, three days per week.

32. It would not have caused Defendant any undue hardship to accommodate Plaintiff's

two-week restriction of working a modified schedule prior to her returning to working fulltime.

33. When Plaintiff returned to work on January 19, 2017, she was able to perform all the essential job functions of her position with only extremely modest, temporary accommodations of definite durations.

34. On Plaintiff's first day back at work on January 19, 2017, Plaintiff met with Tonzia Buor, Defendant's Human Resources Business Partner. Ms. Buor told Plaintiff that Plaintiff's supervisor, Ms. Williams, was inexplicably "unable to accommodate" Plaintiff's temporary restrictions. Ms. Buor insisted Plaintiff could not return to work until she no longer had *any* restrictions associated with her disability. Plaintiff was shocked and reminded Ms. Buor that it would be months before she was expected to be completely relieved of all activity restrictions associated with her disability. Plaintiff asked Ms. Buor if that meant she was being fired. Ms. Buor replied, "No, *when that happens, I'll be very clear*." Plaintiff was then escorted out of the building by Ms. Buor and effectively placed on involuntary leave without pay. Ms. Buor told Plaintiff that the Company would be in touch.

35. In the following weeks – from on or about January 20, 2017 to March 11, 2017, Plaintiff repeatedly attempted to contact Defendant to further discuss her requested accommodations and to engage in the requisite good faith interactive process to allow Plaintiff to return to work. Defendant repeatedly ignored Plaintiff's efforts to engage in the interactive process and return to work.

36. For example, Plaintiff contacted Defendant for purposes of engaging in the interactive process and returning to work repeatedly, including, without limitation, on January 23, January 30, February 7, February 14, and March 13, 2017. Defendant did not return Plaintiff's

phone calls and did not respond via email concerning her requests to return to work.

37. Finally, on March 11, 2017, Plaintiff received a letter from Defendant via Certified Mail stating that Plaintiff's position had been filled on February 20, 2017 and that her employment was therefore terminated. The letter was notably backdated to February 27, 2017, a date right before Plaintiff's one-year anniversary and potential eligibility for protected job leave entitlements under the Family and Medical Leave Act ("FMLA").

**FIRST CLAIM FOR RELIEF**
**(Actual and/or Perceived Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A) Against Defendant)**

38. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

39. At the time Defendant effectively placed Plaintiff on an involuntary, unpaid leave and at the respective times of Plaintiff's replacement and termination, Plaintiff was an individual with a disability under the ADA in that Plaintiff had a physical impairment that substantially limited one or more of her major life activities as compared to most people in the general population, including, without limitation, Plaintiff's ability to lift and bend.

40. At the time Defendant effectively placed Plaintiff on involuntary, unpaid leave and at the respective times of Plaintiff's replacement and termination, Defendant regarded Plaintiff as disabled within the meaning of the ADA.

41. At the time Defendant effectively placed Plaintiff on involuntary leave by refusing to allow her to return to work, Plaintiff was a qualified individual with a disability and able to perform her essential job functions with only modest, temporary accommodations.

42. At the time Defendant terminated Plaintiff, Plaintiff was a qualified individual with

a disability and able to perform her essential job functions with or without accommodation.

43. Plaintiff's request for a modified work schedule for only two weeks was reasonable, in that it would not have caused Defendant an undue hardship.

44. Defendant denied Plaintiff the accommodation of allowing her to work a modified schedule for only two weeks.

45. Defendant further denied Plaintiff the reasonable accommodation of allowing Plaintiff accommodations related to her temporary activity restrictions; restrictions that in no way prevented Plaintiff from performing the essential functions of her position.

46. Plaintiff's request that she be allowed to work as Defendant's Manager of Marketing and Public Relations without bending, twisting, or lifting greater than 30 pounds for six months from the date of Plaintiff's December 8, 2016 surgery was reasonable, in that it would not have caused Defendant an undue hardship.

47. Defendant likewise failed to engage in the requisite good faith interactive process regarding Plaintiff's requested accommodations under the ADA.

48. Defendant did not suggest any position modifications or alternative accommodations that would have allowed Plaintiff to continue working with her modest, temporary restrictions.  Instead, Defendant placed Plaintiff on an unpaid leave without pay, ignored its obligations in the interactive process, replaced Plaintiff approximately one month after she would have been able to return to work, and terminated Plaintiff approximately seven weeks after Plaintiff would have been able to return to work.  Defendant likewise did not offer Plaintiff any position vacancies prior to placing Plaintiff on an indefinite unpaid leave, replacing Plaintiff, and terminating her employment.

49. Defendant further discriminated against Plaintiff by terminating her employment because of Plaintiff's actual and/or perceived disability, in violation of the ADA.

50. The effect of Defendant's above-described discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of Plaintiff's disabilities, and/or because of Defendant's denial of Plaintiff's requests for reasonable accommodations based on her disabilities.

51. Defendant's above-described conduct was intentional.

52. Defendant's above-described conduct was done with malice or reckless indifference to Plaintiff's federally-protected rights.

53. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## SECOND CLAIM FOR RELIEF
**(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a) Against Defendant)**

54. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

55. Plaintiff made numerous requests for reasonable accommodations related to her disability. In doing so, Plaintiff was engaging in activity protected under the ADA.

56. Defendant retaliated against Plaintiff at the time she engaged in the above-described protected activity, and afterward, by subjecting Plaintiff to the following materially adverse employment actions: placing Plaintiff on an involuntary unpaid leave and refusing to allow her to

return to work, and replacing Plaintiff and terminating her employment. These consequences are of the type that would tend to discourage similarly situated employees from requesting accommodation.

57. A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e. Defendant discharged Plaintiff because she requested and/or used accommodations.

58. Defendant's above-described conduct was intentional.

59. Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's federally-protected rights.

60. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B. Attorneys' fees and costs of this action;

C. Pre-judgment and post-judgment interest at the highest lawful rate; and

D. Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 18th day of May, 2021.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ Shelby Woods*
Claire E. Hunter
Shelby Woods
HKM Employment Attorneys LLP
730 17th Street, Suite 750
Denver, Colorado 80202
chunter@hkm.com
swoods@hkm.com
*Attorneys for Plaintiff Laura Morales*